**13-3839-cv**
*Roth v. CitiMortgage Inc.*

# In the
# United States Court of Appeals
## For the Second Circuit

————

AUGUST TERM, 2013

ARGUED: APRIL 1, 2014
DECIDED: JUNE 24, 2014

No. 13-3839-cv

PATRICIA ROTH, individually and on behalf of a class of borrowers
similarly situated, a/k/a Patricia McCarthy,
*Plaintiff-Appellant,*

*v.*

CITIMORTGAGE INC.,
*Defendant-Appellee.*

————

Appeal from the United States District Court
for the Eastern District of New York.
No. 12-cv-2446 – Sandra J. Feuerstein, *Judge*.

————

Before: WALKER, CHIN, and DRONEY, *Circuit Judges*.

————

Defendant CitiMortgage Inc. services a second residential mortgage for plaintiff Patricia Roth. Roth alleges that CitiMortgage's responses to requests for information about her mortgage violated

the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-2617, the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p, and N.Y. General Business Law ("GBL") § 349. The district court (Feuerstein, *J.*) dismissed Roth's complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim, and we AFFIRM.

————

> ROSARIO G. SICURANZA, Sicuranza Law Firm LLC, Melville, NY, *for Plaintiff-Appellant*.
>
> JAMES C. SCHROEDER, Mayer Brown LLP, Chicago IL (Therese Craparo, Mayer Brown LLP, New York, NY, *on the brief*), *for Defendant-Appellee*.

————

PER CURIAM:

Defendant CitiMortgage Inc. services a second residential mortgage for plaintiff Patricia Roth. Roth alleges that CitiMortgage's responses to requests for information about her mortgage violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-2617, the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p, and N.Y. General Business Law ("GBL") § 349. The district court (Feuerstein, *J.*) dismissed Roth's complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim, and we AFFIRM.

## BACKGROUND

Because the district court dismissed Roth's claims on the pleadings, we must limit our consideration "to the factual allegations in [the] amended complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

Since September 2008, Roth has been in default and has made no payments on her second residential mortgage serviced by

CitiMortgage. On April 8 and 9, 2011, Roth's lawyer sent two nearly-identical letters to CitiMortgage[1] requesting many specific pieces of information about her mortgage, each of which stated: "Please treat this letter as a 'qualified written request' under the Real Estate Settlement Procedures Act." CitiMortgage responded to Roth's lawyer on April 18, acknowledging the "numerous questions about the origination and/or servicing of [Roth's] mortgage loan," but noting that "it appears [Roth's] immediate concern is obtaining financial assistance." On June 11, 2011, Roth's lawyer sent another letter, which was identical to the two April letters except that it asked to be treated "as a SECOND 'qualified written request'" and it stated that CitiMortgage's April 18 letter had not complied with RESPA. The three letters from Roth's lawyer to CitiMortgage were sent to two addresses: one in O'Fallon, Missouri,[2] and another in Des Moines, Iowa.

After Roth's lawyer sent his letters, CitiMortgage sent at least three letters directly to Roth. On July 11, 2011, CitiMortgage sent Roth a packet with a financial information form to determine her eligibility for loan modification programs. On March 14, 2012, CitiMortgage wrote to Roth in response to a complaint she had filed with the N.Y. Department of Financial Services, stating that her allegations of improper servicing of her loan were "unsubstantiated" but that CitiMortgage would research and respond to any specific servicing questions. And on April 10, 2012, CitiMortgage sent Roth a notice that her loan was 1322 days in default and that CitiMortgage

---

[1] The letters were actually addressed to an entity named CMI Workout MS in O'Fallon, Missouri, but Roth's complaint alleges that this entity regularly corresponds with CitiMortgage on mortgage servicing issues, and the letters were also copied to a CitiMortgage address in Des Moines, Iowa. CitiMortgage's response to Roth's lawyer's letters referenced the CMI Workout MS address.

[2] The address on the letters actually states "O'Fallon, MD," but this appears to be a typo, as the zip code corresponds to O'Fallon, Missouri, and this Missouri address was contained in CitiMortgage's April 18 letter.

might commence legal action if the matter was not resolved within ninety days.

On May 16, 2012, Roth commenced this action, alleging violations under RESPA, FDCPA, and N.Y. GBL § 349. She filed an amended complaint on August 8, 2012. On September 11, 2013, the district court granted CitiMortgage's motion to dismiss under Rule 12(b)(6). *Roth v. CitiMortgage Inc.*, No. 12-CV-2446, 2013 WL 5205775 (E.D.N.Y. Sept. 11, 2013). Roth timely appealed.

## DISCUSSION

We review the dismissal of a complaint under Fed. R. Civ. P. 12(b)(6) de novo, drawing all reasonable inferences in the plaintiff's favor and dismissing only if the complaint does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted). As we explain below, the district court did not err in dismissing Roth's claims under RESPA, FDCPA, or N.Y. GBL § 349, and Roth should not be granted leave to amend her complaint.

### I.        Real Estate Settlement Procedures Act

CitiMortgage's duties under RESPA are triggered if it receives a qualified written request ("QWR"), defined as correspondence that identifies a borrower's account and "includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B)(ii). Roth alleges that the three letters sent by her lawyer in April and June 2011 are QWRs, and that CitiMortgage is liable for failing to provide the requested information (in violation of § 2605(e)(2)) and for providing information about overdue payments to credit agencies during the sixty-day period following receipt of the letters (in violation of § 2605(e)(3)). We conclude that the district court properly dismissed these claims on the basis that her lawyer's

letters were not sent to CitiMortgage's designated QWR address, and the requests are thus not QWRs under RESPA.

RESPA is a consumer-protection statute, *see Freeman v. Quicken Loans, Inc.*, 132 S. Ct. 2034, 2038 (2012), and it imposes short timeframes for mortgage servicers to respond to potentially detailed inquiries.[3] To aid servicers with this task of providing consumers with timely information, RESPA's implementing regulations allow (but do not require) servicers to establish a designated address for QWRs. *See* 24 C.F.R. § 3500.21(e)(1) ("By notice either included in the Notice of Transfer or separately delivered by first-class mail, postage prepaid, a servicer may establish a separate and exclusive office and address for the receipt and handling of qualified written requests."). The final rulemaking notice for the operative regulation, Regulation X, explained that if a servicer establishes a designated QWR address, "then the borrower must deliver its request to that office in order for the inquiry to be a 'qualified written request.'" Real Estate Settlement Procedures Act, Section 6, Transfer of Servicing of Mortgage Loans (Regulation X), 59 Fed. Reg. 65,442, 65,446 (Dec. 19, 1994).

We agree with the Tenth Circuit that "Regulation X's grant of authority to servicers to designate an exclusive address is a permissible construction of RESPA," and thus "[f]ailure to send the [request] to the designated address . . . does not trigger the servicer's duties under RESPA." *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1148-49 (10th Cir. 2013). As long as a servicer complies with the notice requirements of 24 C.F.R. § 3500.21 for designating a QWR address, a letter sent to a different address is not a QWR, even if an

---

[3] At the time of Roth's lawyer's letter, servicers had twenty days to acknowledge receipt of a QWR and sixty days to respond. *See* 12 U.S.C. § 2605(e)(1)-(2) (2011). As of January 10, 2014, servicers have five days to acknowledge receipt and thirty days to respond, subject to limited extensions. *See* Dodd–Frank Wall Street Reform and Consumer Protection Act, Pub. L. 111-203, § 1463(c), 124 Stat. 1376, 2184 (2010) (codified at 12 U.S.C. § 2605(e)(1)-(2), (4)).

employee at that address (who may not have training in RESPA compliance) in fact responds to that letter.

Roth does not dispute that each of her mortgage statements from CitiMortgage designated a QWR address, or that her lawyer failed to use these addresses. For example, the "Customer Service" section of Roth's April and May 2011 statements states:

> PURSUANT TO § 6 OF RESPA, A "QUALIFIED WRITTEN REQUEST" REGARDING THE SERVICING OF YOUR LOAN MUST BE SENT TO THIS ADDRESS: CITIMORTGAGE, INC. ATTN: CUSTOMER RESEARCH TEAM, PO BOX 9442, GAITHERSBURG, MD 20898–9442. A "qualified written request" is written correspondence, other than notice on a payment coupon or statement, which includes your name, account number and the reason(s) for the request.

Her March 2012 mortgage statement contains an identical notice but with a new P.O. Box in Hagerstown, Maryland.[4] As described above, Roth has alleged that her lawyer sent his requests only to addresses in O'Fallon, Missouri, and Des Moines, Iowa.

Roth argues that CitiMortgage's QWR address notice failed to comply with the obligations of Regulation X in three ways, but none of these arguments have merit. First, Roth argues that the change in the QWR address on the back of her mortgage statements and the fact that other departments apparently handled her lawyer's letters suggest that CitiMortgage may not have had just one "separate and exclusive office and address for the receipt and handling" of QWRs as required by 24 C.F.R. § 3500.21(e)(1). But no authority suggests that a servicer cannot change its QWR address, and how Roth's letters were handled is of little moment if they are not QWRs.

Second, Roth argues that the notice on the back of her mortgage statements is not "separately delivered." But in specifying

---

[4] Roth attached the March 2012 statement to her complaint and the April and May 2011 statements to her opposition to CitiMortgage's motion to dismiss, so these are properly before the court. *See Brass*, 987 F.2d at 150.

that notice may be "either included in the Notice of Transfer or separately delivered," 24 C.F.R. § 3500.21(e)(1) simply means that notice of the QWR address may be delivered separately from the Notice of Transfer—not that it cannot be delivered along with other mortgage information.

Third, Roth argues that notice of CitiMortgage's QWR address was insufficient because it was "buried in fine print." However, CitiMortgage's notice clearly specifies in capital letters, and in the same font size as the rest of the information on her mortgage statement, that "A 'QUALIFIED WRITTEN REQUEST' REGARDING THE SERVICING OF YOUR LOAN MUST BE SENT TO THIS ADDRESS." Roth relies on *Catalan v. RBC Mortgage Co.*, No. 05 C 6920, 2008 WL 2741159, at *7 (N.D. Ill. July 8, 2008), in which the district court found notice insufficient when it stated that "[c]ommunication regarding this notice should be sent to" a specified person without providing her address or mentioning RESPA. But as the district court here concluded, "the notice provided by [CitiMortgage] contains none of the ambiguities that concerned the court in *Catalan*." *Roth*, 2013 WL 5205775, at *6.

In sum, we conclude that Roth has failed to allege that CitiMortgage did not properly designate a QWR address or that any of her lawyer's letters were sent to the designated address. Because Roth's lawyer's letters are not QWRs, CitiMortgage's RESPA duties were not triggered, and therefore the district court properly dismissed Roth's RESPA claims.

## II.    Fair Debt Collection Practices Act

Roth also alleges that CitiMortgage violated FDCPA provisions that prohibit a "debt collector" from "communicat[ing] with a consumer in connection with the collection of any debt . . . if the debt collector knows the consumer is represented by an attorney" and from taking actions to "harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. §§ 1692c(a)(2), 1692d. Roth argues that CitiMortgage violated these provisions by directly sending her its financial assistance packet on July 11, 2011; its response to her N.Y. Department of Financial

Services complaint on March 14, 2012; and its letter of April 10, 2012, stating that her loan was 1322 days in default.

However, the amended complaint does not allege that CitiMortgage acquired Roth's debt after it was in default and so fails to plausibly allege that CitiMortgage qualifies as a debt collector under FDCPA. *See* 15 U.S.C. § 1692a(6)(F)(iii) ("The term 'debt collector' . . . does not include . . . any person collecting or attempting to collect any debt owed . . . to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person."); *see also Alibrandi v. Fin. Outsourcing Servs., Inc.*, 333 F.3d 82, 85-86 (2d Cir. 2003) (per curiam). The district court therefore did not err in dismissing Roth's FDCPA claims.

### III.   New York General Business Law § 349

The final count of Roth's complaint alleges violations of N.Y. GBL § 349, which prohibits "[d]eceptive acts or practices in the conduct of any business." Roth argues that CitiMortgage violated § 349 by providing inadequate notice of its QWR address, but as discussed above, CitiMortgage's QWR address notice was not inadequate. The district court thus did not err in dismissing Roth's § 349 claim.

### IV.   Request for Leave to Amend

Finally, Roth argues for the first time on appeal that if we conclude that her claims were properly dismissed, we should grant her leave to amend her complaint. "The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). However, "[w]hen a plaintiff has not moved for leave to amend in the district court, we are ordinarily disinclined to exercise our discretion to grant his belated request on appeal." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 171 (2d Cir. 1998). Furthermore, leave to amend need not be granted where the proposed amendment would be futile. *Williams v. Citigroup Inc.*, 659 F.3d 208, 214 (2d Cir. 2011) (per curiam). Roth does not propose any specific changes to the complaint beyond adding the exhibits that were included with the original complaint but mistakenly omitted from the amended

complaint. However, those exhibits were considered by both the district court and this court, and they are insufficient to save Roth's claims. Roth's request for leave to amend is denied.

## CONCLUSION

For the reasons stated above, we AFFIRM the judgment of the district court.