J-S84034-16

2017 PA Super 280

| | |
|---|---|
| THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATE HOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2007-HY6 MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-HY6 | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| RICHARD H. BROOKS, JR., | |
| Appellant | No. 1362 EDA 2016 |

Appeal from the Order Entered April 1, 2016
In the Court of Common Pleas of Northampton County
Civil Division at No(s): C-48-CV-2012-2395

BEFORE:  OLSON, SOLANO and FITZGERALD,* JJ.

CONCURRING OPINION BY OLSON, J.:          **FILED AUGUST 28, 2017**

I concur with the learned Majority's decision to vacate the trial court's order granting Appellee's motion for summary judgment.  I write separately to address some of the genuine issues of material fact that I believe preclude summary judgment at this stage.

As the Majority notes, the issue at hand is whether Appellee's servicer, Select Portfolio Servicing, Inc. ("SPS"), failed to respond properly to Appellant's loss mitigation application in violation of 12 C.F.R. § 1024.41(g) ("Regulation X").  Majority Opinion at 1.  The Majority identifies certain communications between SPS and John R.K. Solt, Esquire, Appellant's counsel, regarding Appellant's loss mitigation application and documentation that was needed to complete the application process.  *Id.* at 2-3.  Based

_____

* Former Justice specially assigned to the Superior Court.

upon these communications, the Majority concludes that a genuine issue of material fact exists as to whether Appellee violated Regulation X, thus precluding foreclosure on Appellant's property. *Id.* at 8. Although I agree that the communications between SPS and Attorney Solt referenced by the Majority raise issues of fact regarding the status of Appellant's loss mitigation application, I believe that there are other documents of record that must be addressed so as to provide a clear picture of the factual dispute at hand. Thus, I write separately to address those documents.[1]

A chronology of events, based upon the record, is helpful. Sometime in the spring of 2015, Appellant made a request for a short payoff.[2] On May 6, 2015, SPS sent a letter to Appellant at his home address advising him that a review of his request could not be completed as all of the requested

---

[1] Appellee's brief discusses in detail some of those documents, including three notices (dated May 6, 2015, July 7, 2015 and July 21, 2015) sent by SPS to Appellant advising him that additional documentation was required to complete his loss mitigation application. Appellee's Brief at 3-4. Appellee also references the letter sent by SPS to Appellant dated August 26, 2015 in which SPS notified Appellant that the application was not approved. *Id.* at 4-5. Appellee argues that these documents support its motion for summary judgment. I find that, to the contrary, these documents, when viewed in the context of the entire record, raise genuine issues of material fact. Thus, I believe that it is important to discuss these documents.

[2] It is not clear from the record when Appellant filed his request for a short payoff, however, it had to be before May 1, 2015. In a letter dated May 13, 2015 from Attorney Solt to SPS, a reference is made to a May 1 telephone call between Attorney Solt and Colt Nay of SPS during which Mr. Nay requested additional documents from Appellant in support for his request for a short payoff. Defendant's Brief and Affidavit in Opposition to Motion for Summary Judgment, Exhibit A.

documentation had not been received. The letter asked that such documents be provided by May 21, 2015. Reply Brief in Support of Plaintiff's Motion for Summary Judgment, Exhibit 3. On May 13, 2015, eight days before the deadline for submitting the documents, Attorney Solt sent a letter via email to SPS identifying the documents that were being transmitted as per SPS' request.[3] Defendant's Brief and Affidavit in Opposition to Motion for Summary Judgment, Exhibit A. On May 15, 2015, two days after Attorney Solt provided documents to SPS, Appellant received a letter from SPS at his home address noting that SPS

> is currently reviewing your request for options to resolve the delinquency on this account. We apologize that this has taken more time than originally anticipated. We remain committed to assisting you during your current financial hardship.
>
> We value you as a customer and appreciate your patience. We expect to provide a response to you within the next fifteen (15) business days.

_____

[3] In granting summary judgment, the trial court found that Appellant asserted "in conclusory fashion" that he submitted all of the materials requested by SPS to complete his application and that Appellant failed to "plead in detail the nature of the material that he contends he submitted to [SPS]." Trial Court Opinion, 6/3/16, at 3. This is inaccurate. Attorney Solt's letter to SPS that was emailed on May 13, 2015 lists all of the documents that were being transmitted. Defendant's Brief and Affidavit in Opposition to Motion for Summary Judgment, Exhibit A. Moreover, Attorney Solt sent another letter to SPS on August 12, 2015 (which will be discussed in greater detail *infra*) that lists the additional documents that were being provided as per SPS' request. **Id.** at Exhibit D.

Reply Brief in Support of Plaintiff's Motion for Summary Judgment, Exhibit 6. Three days later, on May 18, 2015, SPS sent another letter to Appellant at his home address indicating that SPS "received correspondence from [Appellant] or [Appellant's] authorized agent" and noted that the correspondence was forwarded on to "the appropriate department for handling." *Id.* On June 1, 2015, SPS sent a letter to Appellant at his home address again indicating that SPS received information from Appellant or his authorized agent regarding Appellant's request for assistance and stating that the information will be included in SPS' review of the account. The letter goes on to state, "Please know that you are entitled to a copy of the property valuation report we may order in connection with any applicable account modification review. We will send the valuation report to you upon the completion of the valuation." *Id.*

On June 24, 2015, Attorney Solt sent an email to SPS referencing his email and letter of May 13, 2015 that transmitted the documentation needed to review Appellant's request for a short payoff. Attorney Solt stated that he had not received a response and he inquired as to the status of the matter. Defendant's Brief and Affidavit in Opposition to Motion for Summary Judgment, Exhibit B. Five days later, on June 29, 2015, SPS sent a letter to Appellant which was identical to the letter sent on June 1, 2015. Reply Brief in Support of Plaintiff's Motion for Summary Judgment, Exhibit 6. One week later, SPS sent a letter to Appellant on July 6, 2015 stating that review of

the short payoff request could not be completed as SPS did not receive all of the necessary documentation. The letter indicated that the documents needed to be received by SPS by July 21, 2015. Reply Brief in Support of Plaintiff's Motion for Summary Judgment, Exhibit 4. Attorney Solt then sent an email to SPS on July 15, 2015 referencing his earlier emails and correspondence of May 13, 2015 and June 24, 2015, again asking for a response and status update. Defendant's Brief and Affidavit in Opposition to Motion for Summary Judgment, Exhibit C. One week later, SPS sent a letter to Appellant on July 21, 2015 stating that information was missing and that the documents must be received by August 5, 2015. Reply Brief in Support of Plaintiff's Motion for Summary Judgment, Exhibit 5.

On August 12, 2015, Attorney Solt sent an email to Larry Gonzales of SPS which references a telephone conversation that Attorney Solt and Mr. Gonzales had on August 4, 2015, one day before the August 5, 2015 due date referenced in SPS' letter of July 21, 2015. Defendant's Brief and Affidavit in Opposition to Motion for Summary Judgment, Exhibit D. According to the August 12 email, Attorney Solt forwarded additional documents in support of Appellant's request for a short payoff as per Mr. Gonzales' request made during the August 4th telephone conversation.[4] *Id.*

---

[4] In its July 21, 2015 letter, SPS indicates that various documents are still missing, including federal tax returns, bank statements, profit/loss statements, and a buyer pre-qualification letter indicating the source of
*(Footnote Continued Next Page)*

- 5 -

The email also notes that, during the conversation, Mr. Gonzales stated that he had ordered an appraisal of Appellant's property, however, as of August 12, no appraiser had contacted Attorney Solt to make arrangements. ***Id.*** The next day, a letter was sent from SPS to Appellant which was identical to the letter it sent on May 15, 2015 – again indicating that it was reviewing Appellant's request for options, apologizing for the delay and indicating that SPS expected to provide a response within 15 business days. Reply Brief in Support of Plaintiff's Motion for Summary Judgment, Exhibit 6.

Nothing further transpired between the parties until SPS sent its letter of August 26, 2015 to Appellant indicating that SPS was "unable to approve [Appellant's] request for assistance involving a Short Payoff . . . because the required documentation needed to proceed was not received." ***Id.*** at Exhibit 2. One week later, Attorney Solt sent an email to SPS referencing SPS' letter of August 26, 2015 and indicating that all requested additional

*(Footnote Continued)* —————————

funds available for the purchase price of the property. Reply Brief in Support of Plaintiff's Motion for Summary Judgment, Exhibit 5. In the August 12, 2015 email to Mr. Gonzales, Attorney Solt states that he is transmitting copies of Appellant's 2014 federal tax return, a profit and loss statement from Appellant's business, Appellant's most recent bank statement, and a letter from the individual providing the funds for the short payoff. Defendant's Brief and Affidavit in Opposition to Motion for Summary Judgment, Exhibit D. A simple reading of these two documents reflects that the documents that SPS claimed were still missing were, in fact, provided by counsel for Appellant. Hence, these two documents, in and of themselves, create a genuine issue of material fact as to whether Appellant submitted a complete loss mitigation application as required by Regulation X and whether SPS acted improperly in denying Appellant's application based upon the alleged failure to supply requested documentation.

documentation was forwarded to SPS on August 12, 2015. Reply Brief in Support of Plaintiff's Motion for Summary Judgment, Exhibit F. The email also stated that Attorney Solt was unaware of any further documentation needed. It concluded with "Please advise immediately." *Id.*

In both its motion for summary judgment and in its brief filed with this Court, Appellee argues that the various letters asking Appellant for additional documentation and providing due dates for said documents clearly establish that Appellee acted in accordance with Regulation X and in good faith in attempting to address Appellant's loss mitigation application. Thus, Appellee concludes that there is no genuine issue of material fact that would prevent summary judgment in its favor. I disagree. I set forth the detailed chronology of events as established by the documents of record to show that, to the contrary, there are numerous issues of fact regarding the good faith efforts performed by Appellee and its agent, SPS, in dealing with Appellant. First, it appears from the documents that Attorney Solt, acting on behalf of Appellant, was in telephone contact with representatives of SPS, including Mr. Gonzales, and that he attempted to provide the documentation requested.[5] Instead of sending correspondence to Attorney Solt who was

---

[5] Clearly, genuine issues of material fact exist as to what SPS representatives said to Attorney Solt during those conversations and whether those conversations lulled Attorney Solt and Appellant into a false sense of security that SPS had the documents needed and was actively working on the matter.

clearly acting as counsel for Appellant, SPS sent numerous **form** letters to Appellant at his home address. A number of these letters referenced that SPS had received information regarding Appellant's request, was reviewing that information, apologized for the delay in resolving the matter, and indicated that decisions would be made within 15 days. The documents also indicate that Attorney Solt was forwarding documentation to SPS as per SPS' requests. Moreover, every time Attorney Solt sent an email to SPS inquiring as to the status of Appellant's application, no one from SPS responded to Attorney Solt. Instead, more form letters were sent to Appellant. Viewed in a light most favorable to Appellant as the non-moving party, these documents raise genuine issues of material fact that preclude the entry of summary judgment.

Appellee also argues and the trial court concluded that, after Appellant's application was denied, Appellant failed to comply with the error resolution procedures set forth in 12 C.F.R. § 1024.35 to assert a violation of Regulation X. Trial Court Opinion, 6/3/16, at 5; Appellee's Brief at 10-11. Appellee argues that the August 26, 2015 letter sent to Appellant advising him that his application was not approved made it clear that "[Appellant] had the right to challenge the decision as error, but he could only do so by sending written correspondence to the specific address listed." Appellee's Brief at 10. Appellee argues that Appellant failed to follow these instructions and, instead, had his attorney send an email on September 2, 2015. *Id.* at

11.   Again, in determining whether Appellant adequately raised an objection to the denial of his application, I believe that the entire course of conduct between the parties from May, 2015 until September, 2015 has to be examined.  The record establishes that Attorney Solt, as Appellant's legal counsel, had various telephone conversations and email communications with SPS representatives.  Instead of communicating with Attorney Solt, SPS sent form letters to Appellant's address and ignored Attorney Solt's requests for information at each turn.

Genuine issues of material fact exist as to whether Attorney Solt's September 2, 2015 email was sufficient to raise an objection to the denial of Appellant's application and whether SPS was relieved of any duties to respond to Attorney Solt's September 2, 2015 email.

Moreover, I am not persuaded by Appellee's argument that Appellant's failure to send his written objection to the address designated in the August 26, 2015 letter compels the legal conclusion that Appellant improperly challenged SPS' determination and, therefore, SPS (and Appellee) were relieved of any responsibility.  Section 1024.35 of Regulation X governs the error resolution procedures that must be followed if a borrower objects to a servicer's determination regarding the borrower's loss mitigation application. This section provides in relevant part:

> A servicer **shall** comply with the requirements of this section for **any** written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables

- 9 -

the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred.

12 C.F.R. § 1024.35(a) (emphasis added). This section goes on to provide that, except for a few exceptions not applicable in this case, "a servicer **must** respond to a notice of error" by either correcting the error identified by the borrower, or conducting a reasonable investigation and providing the borrower with written notification that includes, among other requirements, a statement that no error occurred and the reason for that determination. 12 C.F.R. § 1024.35(e)(1)(i)(A) and (B) (emphasis added). A servicer is relieved of the obligation to respond to a notice of error in only three instances, *i.e.*, 1) the notice of error is duplicative of a previous notice; 2) the notice of error is overbroad; or, 3) the notice of error is untimely. 12 C.F.R. § 1024.35(g)(1)(i)-(iii).

Appellee is correct that section 1024.35(c) of Regulation X provides that a servicer may establish an address that a borrower must use to submit a notice of error and that SPS provided notice to Appellant in the August 26, 2015 letter that notices of error were required to be sent to a specific address. However, nothing in section 1024.35 provides that a servicer is relieved of its responsibility of responding to a notice of error if a borrower sends the notice to an address other than the designated address. Instead, Regulation X expressly provides that a servicer is relieved of its obligation of responding to a notice of error only if the notice is duplicative, overbroad or

untimely. 12 C.F.R. § (g)(1)(i)-(iii). None of these exceptions are applicable in this case.[6]

When considering the entire record as a whole, it is clear that summary judgment is not warranted and I concur with the learned Majority that the order granting summary judgment must be vacated.

---

[6] Appellee cites to **Roth v. Citimortgage, Inc.**, 756 F.3d 178 (2d Cir. 2014) and **Berneike v. Citimortgage, Inc.**, 708 F.3d 1141 (10th Cir. 2013) as support for its position that Appellant's failure to send the notice of error to the address designated in SPS' August 26, 2015 letter relieves it of responsibility to respond to said notice. **Roth** and **Berneike** are distinguishable from this case as those cases dealt with the requirements for triggering a servicer's obligation to respond to a qualified written request (QWR) under the Real Estate Settlement Procedures Act of 1974 (RESPA), 12 U.S.C.A. §§ 2601-2617. The obligations under RESPA are not applicable to the case *sub judice*.