22-1042-cv
Joseph v. Ocwen Financial Corporation

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 25th day of May, two thousand twenty-three.

PRESENT:
> AMALYA L. KEARSE,
> DENNIS JACOBS,
> STEVEN J. MENASHI,
> *Circuit Judges.*

_____

Phenide Joseph, George Joseph,

> *Plaintiffs-Appellants*,

> v.                                                        22-1042

Ocwen Financial Corporation, Ocwen Loan Servicing, LLC,

> *Defendants-Appellees*,

**John Doe 1 through John Doe 10, representing any and all owners, trustees, officers, affiliates, individuals supervising agencies, and corporations, having or claiming an interest in this present controversy,**

*Defendants.*

_____

**FOR PLAINTIFFS-APPELLANTS:**               Phenide Joseph, George Joseph, pro se, Patchogue, NY.

**FOR DEFENDANTS-APPELLEES:**               Ryan Sirianni, Greenberg Traurig, LLP, Garden City, NY.

Appeal from a judgment of the United States District Court for the Eastern District of New York (DeArcy Hall, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED,**

**ADJUDGED, AND DECREED** that the judgment of the district court is

**AFFIRMED**.

Appellants Phenide and George Joseph, pro se, appeal the dismissal of

their Second Amended Complaint for failure to state a claim pursuant to Federal

Rule of Civil Procedure 12(b)(6).   The Josephs sued their mortgage loan servicer, Ocwen Loan Servicing, LLC ("Ocwen"), and its parent company under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601–17, and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692p.   We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

"We review *de novo* the district court's dismissal for failure to state a claim, accepting all well-pleaded factual allegations as true and drawing all inferences in favor of the non-moving party."   *74 Pinehurst LLC v. New York*, 59 F.4th 557, 562 (2d Cir. 2023).   To avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).   "We liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest."   *Publicola v. Lomenzo*, 54 F.4th 108, 111 (2d Cir. 2022) (internal quotation marks and citation omitted).

**I**

Count One of the Second Amended Complaint asserted a violation of RESPA's requirements regarding how mortgage loan servicers must respond to "qualified written requests" ("QWRs") from borrowers. *See generally* 12 U.S.C. § 2605(e). A QWR is "correspondence that identifies a borrower's account and 'includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.'" *Roth v. CitiMortgage Inc.*, 756 F.3d 178, 181 (2d Cir. 2014) (quoting 12 U.S.C. § 2605(e)(1)(B)(ii)). RESPA requires that, within 30 days of receiving a QWR, the servicer must (A) "make appropriate corrections" in the borrower's account, 12 U.S.C. § 2605(e)(2)(A); (B) provide, after investigation, a written statement containing "to the extent applicable . . . the reasons for which the servicer believes the account of the borrower is correct" and a phone number for additional assistance, *id.* § 2605(e)(2)(B); or (C) provide, after investigation, a written statement that includes "information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer" and

4

a phone number for additional assistance, *id*. § 2605(e)(2)(C).

The Josephs sent Ocwen a QWR in April 2018.[1] They concede that Ocwen provided a timely explanation for why it believed their account to be correct. instead, but they argue that Ocwen did not conduct a reasonable investigation in response to their QWR. Had Ocwen conducted such an investigation, the Josephs contend, it would have discovered (and then corrected) the errors in the account statement the Josephs had identified. The district court determined that the reasonableness of a servicer's investigation is not actionable under RESPA. *Joseph v. Ocwen Fin. Corp.*, No. 18-cv-4971, 2022 WL 1085296, at *3 (E.D.N.Y. Apr. 11, 2022). But even assuming *arguendo* that RESPA does impose a substantive obligation to conduct a "reasonable" investigation, *see Wirtz v. Specialized Loan Servicing, LLC*, 886 F.3d 713, 717 (8th Cir. 2018) (holding that RESPA requires

---

[1] We decline to consider the Josephs' argument that there is more than one QWR at issue in this case, because they argued in the district court that their second amended complaint was premised on the April 2018 QWR only. "[I]t is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal." *Greene v. United States*, 13 F.3d 577, 586 (2d Cir. 1994). Therefore, when a party changes its position "and advances arguments available but not pressed below," we ordinarily will not consider those arguments on appeal. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 124 n.29 (2d Cir. 2005) (internal citation omitted).

servicers to conduct "a reasonably thorough examination before responding" to a QWR), we conclude that plaintiffs' Second Amended Complaint failed to plausibly allege that Ocwen's investigation was inadequate. *See Wells Fargo Advisors, LLC v. Sappington*, 884 F.3d 392, 396 n.2 (2d Cir. 2018) ("[W]e are free to affirm on any ground that finds support in the record, even if it was not the ground upon which the trial court relied." (citation omitted)).

The Josephs' argument, as we understand it, is that a forbearance agreement executed in 2005 effectively rescinded a 1997 Modification Agreement between the Josephs and their lender. The Modification Agreement had extended the loan maturity date eight years beyond its original term, but because (per the Josephs) that agreement is no longer in effect, the loan should have reverted to its pre-1997 terms (including the earlier maturity date) once they had satisfied the terms of the forbearance agreements. And the Josephs contend that, since that happened in 2017, they are not obligated to make payments on the mortgage for the eight additional years contemplated by the 1997 Modification Agreement.

But the Second Amended Complaint, read as a whole and with its attached

6

documents, does not support this theory. We see no reason to conclude that the 1997 Modification Agreement is not binding, even if the Josephs are now dissatisfied with its terms. Neither the 2005 Forbearance Agreement nor a similar agreement executed the next year can reasonably be read to have terminated the 1997 Modification Agreement. On the contrary, Phenide Joseph acknowledged in the 2005 Forbearance Agreement that she had executed a new *note* in 1997 secured with a mortgage and that it was the default on *that* note that necessitated the execution of the forbearance agreement. The premise on which the Josephs' RESPA claim rests—that the forbearance agreements voided the 1997 Modification Agreement and revived their original loan terms—is unsupported by the Second Amended Complaint and attached documents. Accordingly, Count One was properly dismissed.[2]

---

[2] We have considered the Josephs' other objections to the district court's order with respect to their RESPA claim and find them to be without merit.

**II**

Counts Two and Three of the Second Amended Complaint assert claims under two provisions of the FDCPA, 15 U.S.C. §§ 1692e and 1692g.[3] Those provisions apply only to "debt collectors," a category which excludes "any person collecting or attempting to collect any debt . . . to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." *Id.* § 1692a(6)(F)(iii). The focus is on the status of the debt at the time the purported "debt collector" obtained an interest in the loan: was it already in default? Accordingly, a complaint that "does not allege that [a servicer] acquired [the plaintiff's] debt after it was in default . . . fails to plausibly allege that [the servicer] qualifies as a debt collector under the FDCPA." *Roth*, 756 F.3d at 183.

The district court reasoned that the Second Amended Complaint failed to allege that the defendants were debt collectors because Ocwen began servicing

---

[3] The Josephs characterized these claims in their complaint as arising under RESPA rather than the FDCPA, which would account for their (mistaken) contention on appeal that the district court failed to address those claims in its decision.

the loan before the Josephs' most recent (2018) default. *Joseph*, 2022 WL 1085296, at *3. But construing the Second Amended Complaint liberally and in conjunction with its attached documents complicates matters somewhat. The Josephs alleged that (1) they had a dispute with their former loan servicer beginning in 2001; (2) the dispute was resolved in April 2005 by the 2005 Forbearance Agreement with that prior servicer, which stipulated that any pending foreclosure would be put on hold if Ms. Joseph made specified monthly payments to bring the loan current by a specified date; and (3) Ocwen became the loan servicer in June 2005, after the 2005 Forbearance Agreement was executed.[4] It is therefore arguable that the Josephs' loan had been in default—which is why it was subject to a forbearance agreement—when Ocwen became the servicer.

"Unfortunately, the FDCPA does not define so key a term as 'default.'" *Alibrandi v. Fin. Outsourcing Servs., Inc.*, 333 F.3d 82, 86 (2d Cir. 2003) (per

---

[4] In a letter attached as an exhibit to the Josephs' complaint, Ocwen states that it acquired the servicing rights to the account in 1997. But the letter likely refers to the previous servicer, Ocwen Federal Bank, FSB, which is not a party to this action. We will credit the allegations of the complaint.

curiam). But there is no allegation that the Josephs were in default *on the 2005 Forbearance Agreement*, which specified their payment obligations at the time Ocwen obtained an interest in their loan. At oral argument, Mr. Joseph confirmed that the Josephs had not defaulted with respect to the 2005 Forbearance Agreement:

> MR. JOSEPH: They took over the loan . . . after we . . . signed the [forbearance] agreement. . . .
>
> JUDGE JACOBS: And in that time, were you in default under the forbearance agreement or were you making the payments that the forbearance agreement required[?]
>
> MR. JOSEPH: We were making the payments. The record will show that the payments were made . . . .

Tr. at 7.

In such a situation, we do not understand the debt as being in default for purposes of the FDCPA's definition of a "debt collector." The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to [e]nsure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).

In view of those purposes, and as other courts have explained, "[c]ommon sense and the plain meaning of the statute require that we distinguish between an individual who comes collecting on a defaulted debt and one who seeks collection on a debt owed under a . . . forbearance agreement that is current." *Bailey v. Sec. Nat. Servicing Corp.*, 154 F.3d 384, 387 (7th Cir. 1998). Accordingly, Ocwen is not a "debt collector" subject to the FDCPA, and the Josephs' two claims under that statute do not state a claim upon which relief can be granted.

We have considered the Josephs' remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.[5]

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[5] The Clerk of Court is further directed to seal the appellants' appendix, 2d Cir. 22-1042, doc. 45, because we have determined, sua sponte, that it contains unredacted, sensitive personal information. *See* Fed. R. App. P. 25(a)(5); Fed. R. Civ. P. 5.2(a).