[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-15119
_____

D.C. Docket No. 1:14-cv-01569-ODE

STEVEN BIVENS,

Plaintiff - Appellant,

versus

BANK OF AMERICA, N.A.

Defendants,

SELECT PORTFOLIO SERVICING, INC.,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(August 17, 2017)

Before MARTIN, JILL PRYOR, and ANDERSON, Circuit Judges.

JILL PRYOR, Circuit Judge:

Out of the blue, Steven Bivens received a letter from Select Portfolio Servicing, Inc. ("SPS"), a company with which he had had no prior dealings that purported to be his home loan servicer.  Skeptical, Bivens wrote SPS a letter demanding proof of its authority to service his loan.  He neglected, though, to mail his letter to the address SPS had designated for receiving such correspondence.  When SPS failed to provide the proof that Bivens had requested, he sued SPS for damages under the Real Estate Settlement Procedures Act, 12 U.S.C. 2601 *et seq.* ("RESPA").  12 U.S.C. § 2605(e).  The district court concluded that because a regulation then in effect required Bivens to send his letter to SPS's designated address to trigger its duty to respond, SPS was entitled to summary judgment.  After careful consideration and with the benefit of oral argument, we affirm.

## I.    FACTS

In 2006, Bivens borrowed money from Mortgage Lenders Network to purchase a home.  After a few years, he stopped paying the mortgage.  On December 4, 2012, SPS sent Bivens a letter announcing that Bank of America had assigned it the servicing rights to his mortgage.  The letter provided Bivens with three separate addresses to use for correspondence—one for General Correspondence, one for Disputes/Inquiries, and one for Payment Remittance.  The otherwise identical addresses had different post office box numbers.  SPS's letter explained:

2

If you wish to send a written request about your account or dispute any of the information on this statement, please do not include it with your monthly payment.  All written requests must be sent to the address listed below for Disputes/Inquiries, as this is our exclusive address for processing these matters.  If you send your request or dispute to any other address, it may not be processed in accordance with our Customer Service Timelines.

December 4 Letter at 2 (Doc. 89-3 at 69.) [1]

Bivens, through his attorney, responded by sending a letter to SPS's General Correspondence address, not its Disputes/Inquiries address.  In the letter, Bivens stated, "It is my understanding that [SPS] . . . is now going to be the servicer of [my] loan."  December 17, 2012 Letter at 1 (Doc. 90-6).  He asserted that he "d[id] not believe SPS ha[d] the standing to enforce this obligation" and asked SPS to "fully identify the owner of the loan by name, address and phone number."  *Id.* at 3-4.  He also requested from SPS "a certified copy of [his] promissory note <u>in its current condition</u> showing <u>all</u> endorsements and/or any allonge that show that the purported 'owner' of the loan maintains legal 'holder in due course' status as of today's date."  *Id.* at 4.  Bivens designated his letter as a "qualified written request" ("QWR") under RESPA, 12 U.S.C. § 2605(e).

SPS received Bivens's letter at its General Correspondence address and forwarded it to its Disputes/Inquiries department.  It sent Bivens two letters in response to his letter.  SPS's first letter identified the holder of Bivens's note as

---

[1] Unless otherwise specified, citations to "Doc. _" refer to numbered entries on the district court docket.

3

Wells Fargo Bank, N.A., as Trustee, in Trust for SASCO 2007-MLN1 Trust Fund. Its second letter informed Bivens that he had mailed his letter to the wrong address, and once again provided him with its Disputes/Inquiries address. SPS did not, however, timely provide Bivens a certified copy of his note in its current condition, as he had requested.

Bivens sued SPS in the district court, alleging that he was entitled to actual and statutory damages based on SPS's failure to provide an appropriate response to his letter, which he claimed qualified as a QWR under RESPA.[2] SPS moved for summary judgment on the grounds that (1) Bivens's letter was not a QWR because he had not sought information regarding the servicing of his loan; (2) SPS's acknowledgment and response obligations under RESPA were not triggered because Bivens failed to mail his letter to the correct address; and (3) Bivens could not prove actual damages or recover statutory damages. The district court granted SPS summary judgment, determining, among other things, that SPS had no duty to respond because Bivens had mailed his QWR to the wrong address. Bivens timely appealed.

## II.    STANDARD OF REVIEW

---

[2] Bivens also brought claims against two other entities, but the district court dismissed these claims for failure to state a claim. On appeal, Bivens does not challenge the dismissal of his claims against the other defendants.

4

A litigant is entitled to summary judgment if it shows there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). We review summary judgment decisions *de novo*, drawing all reasonable inferences and reviewing all evidence in the light most favorable to the nonmoving party. *Likes v. DHL Express (USA), Inc.*, 787 F.3d 1096, 1098 (11th Cir. 2015). "An agency's interpretation of its own regulations is 'controlling unless plainly erroneous or inconsistent with the regulation.'" *Sierra Club v. Johnson*, 436 F.3d 1269, 1274 (11th Cir. 2006) (quoting *Auer v. Robbins*, 519 U.S. 452, 461 (1997)).

### III.    ANALYSIS

RESPA is a consumer protection statute that imposes a duty on servicers of mortgage loans to acknowledge and respond to inquiries from borrowers. *See* 12 U.S.C. § 2605(e); *Freeman v. Quicken Loans*, 132 S. Ct. 2034, 2038 (2012). When a borrower submits a QWR—written correspondence that includes the borrower's name and account and sufficient detail about the information sought— the servicer must provide "a written response acknowledging receipt of the correspondence" and take certain other responsive actions within specified time periods. 12 U.S.C. § 2605(e)(1)(A), (e)(1)(B), (e)(2).

RESPA originally authorized the Secretary of the Department of Housing and Urban Development "to prescribe such rules and regulations" and "make such

5

interpretations . . . as may be necessary to achieve [the statute's] purposes."  12 U.S.C. § 2617 (repealed 2011).  Under this authority, the Secretary promulgated Regulation X, 24 C.F.R. § 3500.21 (repealed 2014), RESPA's primary implementing regulation.  *See Lage v. Ocwen Loan Servicing LLC*, 839 F.3d 1003, 1005 (11th Cir. 2016).  Section 3500.21(e)(1), among other things, authorized servicers to "establish a separate and exclusive office and address for the receipt and handling of qualified written requests."  24 C.F.R. § 3500.21(e)(1).[3]  The final rulemaking notice from the Secretary explained that if a servicer established a designated address for receiving QWRs, "then the borrower must deliver its request to that office in order for the inquiry to be a 'qualified written request.'"  Real Estate Settlement Procedures Act, Section 6, Transfer of Servicing of Mortgage Loans (Regulation X), 59 Fed. Reg. 65,442, 65,446 (Dec. 19, 1994).

The district court held that because Bivens had not mailed his QWR to the appropriate address, SPS had no duty to respond to it.  Bivens argues Regulation X did not apply to his QWR because SPS (1) did not properly designate an exclusive address for receipt of QWRs and (2) processed both QWRs and other types of

---

[3] The Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank") transferred the Secretary's rulemaking authority to the newly-created Consumer Financial Protection Bureau ("CFPB").  Pub. L. No. 111-203, § 1098, 124 Stat. 1376, 2104 (2010). Consistent with this provision of Dodd-Frank, the Secretary rescinded the version of Regulation X at issue in this case.  Removal of Regulations Transferred to the Consumer Financial Protection Bureau, 79 Fed. Reg. 34,224, 34,224-25 (June 16, 2014).  CFPB then promulgated a new version of Regulation X, which, like its predecessor, allows a servicer to direct borrowers to mail QWRs to a designated address.  12 C.F.R. §§ 1024.35(c), 1024.36(b).

correspondence at the same office.  We conclude, however, that SPS properly

designated an exclusive address for receiving QWRs and that the regulation did not

require SPS to use that office solely for the purpose of processing QWRs.  The

district court did not err, then, in granting summary judgment to SPS.

The Secretary's construction of § 3500.21(e)(1) was neither "plainly

erroneous [n]or inconsistent with the regulation."  *Sierra Club*, 436 F.3d at 1274

(internal quotation marks omitted).  To the contrary, common sense suggests that if

a servicer may designate an address for receiving QWRs, it may require borrowers

to send QWRs to that address in order to receive a response.  We thus accord

authoritative weight to the Secretary's construction of § 3500.21(e)(1).  If a

servicer designates a particular address for receiving QWRs, Regulation X requires

a borrower to mail a QWR to that address to trigger the servicer's duty to respond.[4]

Bivens argues that he was not required to deliver his letter to the address for

Disputes/Inquiries for it to qualify as a QWR because SPS failed to establish a

designated address for receiving QWRs.  He contends that SPS designated no such

---

[4] The Second and Tenth Circuits have reached the same conclusion, albeit for a different reason.  *See Roth v. CitiMortgage Inc.*, 756 F.3d 178, 181-82 (2d Cir. 2014) ("[F]ailure to send the request to the designated address does not trigger the servicer's duties under RESPA" (alterations omitted)); *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1149 (10th Cir. 2013) ("Receipt at the designated address is necessary to trigger RESPA duties.").  *Roth* and *Berneike* each held that Regulation X permissibly construed RESPA.  *See Roth*, 756 F.3d at 182; *Berneike*, 708 F.3d at 1148.  Without disputing that conclusion, we decline to follow *Roth* and *Berneike*'s analysis here because we believe that the relevant issue is not whether the Secretary permissibly construed RESPA, but whether he permissibly construed Regulation X, which requires a different analysis.  *Compare Auer*, 519 U.S. at 461, *and Sierra Club*, 436 F.3d at 1274, *with Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-44 (1984).

address because it never (1) identified an address for QWRs specifically or (2) established an office solely to process QWRs.  We conclude that SPS properly designated an address for receiving QWRs and that its use of that address for additional purposes is of no moment.

First, Bivens argues that SPS failed to designate an address for receiving QWRs because it provided him with an address only for "written requests."  SPS's letter to Bivens said, "All written requests must be sent to the address listed below for Disputes/Inquiries, as this is our exclusive address for processing these matters."  December 4 Letter (Doc. 88-2 at 82).  Bivens contends that § 3500.21 required SPS to use the term "*qualified* written requests"; designating an address merely for written requests, he says, did not suffice.  We disagree.

By directing borrowers to send *all* written requests to the specified address, SPS necessarily directed them to send "qualified" written requests to that address.  Its notice used more accessible language than Regulation X required:  borrowers likely would be more familiar with the lay terms "disputes," "inquiries," and "written requests" than with the statutory term of art, "qualified written request." 24 C.F.R. § 3500.21(e)(1).  SPS subjected itself to the administrative burden of evaluating and prioritizing a larger quantity of mail to identify QWRs, perhaps so as to minimize consumer confusion.  To penalize it for doing so would be perverse. This is not to suggest that a servicer may designate an address for QWRs using

8

terminology so general or vague that it would fail to put a lay borrower on notice that the address was intended for QWRs.  A servicer's designation of an exclusive address for QWRs must be clear to a reasonable borrower—to say otherwise would frustrate RESPA's consumer-protection purpose.  *See Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1244 (11th Cir. 2016) ("RESPA, as a remedial consumer-protection statute, should be construed liberally in order to best serve Congress's intent.").  We have little difficulty, however, concluding that SPS's designation of an address for "written requests" satisfied that standard.

Second, Bivens argues that SPS failed to "establish a separate and exclusive office," *id.*, for processing QWRs because it processed both QWRs and other correspondence at the same office.[5]  We construe "[r]egulations with a common sense regard for regulatory purposes and plain meaning."  *United States v. Fuentes-Coba*, 738 F.2d 1191, 1195 (11th Cir. 1984) (internal quotation marks omitted).  Bivens's construction of § 3500.21(e)(1) would frustrate, not serve, its purpose.  Section 3500.21(e)(1) was designed to help servicers timely respond to QWRs by enabling them to more easily identify and prioritize correspondence that purport to be QWRs.  *See Roth*, 756 F.3d at 181 ("To aid servicers with th[e] task of providing consumers with timely information, RESPA's implementing regulations allow (but do not require) servicers to establish a designated address

_____

[5] SPS does not dispute that it processed QWRs and other correspondences at the same office using the same staff.

for QWRs."); 59 Fed. Reg. at 65,446 ("This rule does not require that a servicer establish an office to handle borrowers' complaints.  It does, however, allow the servicer to do so.").  Allowing a servicer to designate a specific mailing address for QWR receipt at a common mail processing facility would enable its employees to easily identify purported QWRs by the address they bear.  In contrast, requiring a servicer to maintain a separate office for the sole function of processing QWRs would impose high costs on the servicer while providing little benefit.  Bivens notes that employees at a QWR-only processing facility could receive specialized training for responding to QWRs, but a servicer could just as easily provide such training to employees at a common mail processing facility.  We thus reject Bivens's argument that to "establish a separate and exclusive office," a servicer must devote an office to the "separate and exclusive" purpose of QWR processing. 24 C.F.R. § 3500.21(e)(1).

Section 3500.21(e)(1) is more sensibly construed to authorize a servicer to designate a particular office—"separate" from any other office it may have—as its "exclusive" office for receiving QWRs, without regard to any other function that office serves.  *Id.*  Such a construction accords with § 3500.21(e)(1)'s text and purpose.  We conclude that SPS successfully invoked § 3500.21(e)(1) by directing borrowers to mail QWRs to a particular office, even though it used that office for other purposes as well.

10

Because Bivens failed to address his QWR to SPS's designated address for QWR receipt, SPS had no duty to respond to it.  Thus, the district court did not err in granting summary judgment to SPS. [6]

## IV.    CONCLUSION

We affirm the district court's grant of summary judgment.

**AFFIRMED.**

---

[6] Because we conclude that SPS had no duty to respond to Bivens's letter, we need not decide whether (1) the information that Bivens sought "relat[ed] to the servicing of [his] loan," as RESPA requires, 12 U.S.C. § 2605(e)(1)(A); (2) SPS's failure to send Bivens the information he had requested caused him to suffer damages, *see Renfroe*, 822 F.3d at 1246 ("[D]amages are an essential element in pleading a RESPA claim."); or (3) the district court erred by assuming that SPS was Bivens's servicer.

Bivens also raises several arguments on appeal related to the district court's discovery orders. "[W]e will not overturn discovery rulings unless it is shown that the District Court's ruling resulted in substantial harm to the appellant's case." *Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 325 F.3d 1274, 1286 (11th Cir. 2003) (internal quotation marks omitted).  Bivens makes no meritorious argument that the district court's orders disposing of his discovery motions resulted in any prejudice to his case.  Those orders are thus AFFIRMED.

11