ORINDA D. EVANS, UNITED STATES DISTRICT JUDGE
This case is presently before the Court on United States Magistrate Judge Linda T. Walker's Non-Final Report and Recommendation ("R & R") [Doc. 64] in which she recommends that Defendant Ocwen Loan Servicing, LLC's ("Ocwen") Motion to Dismiss [Doc. 54] be granted in part and denied in part. Defendant timely filed objections to the R & R [Doc. 69]. For the reasons stated below, Defendant's objections are OVERRULED IN PART and SUSTAINED IN PART, the R & R is ADOPTED IN PART and OVERRULED IN PART, and Defendant's Motion to Dismiss is hereby DENIED IN PART and GRANTED IN PART.
I. BACKGROUND
A. Procedural Background
On November 3, 2016, Plaintiff Fred Ponder ("Plaintiff") began the instant action against Ocwen. Plaintiff amended his complaint twice, filing Plaintiff Fred Ponder's Second Amended Complaint [Doc. 53] on November 6, 2017. Plaintiff's Second Amended Complaint asserts claims against Ocwen pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681p ("FCRA"); the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq. ("RESPA"); and state negligence law.
On November 20, 2017, Ocwen filed its Motion to Dismiss Second Amended Complaint [Doc. 54]. Plaintiff responded in opposition [Doc. 55]. On July 30, 2018, Judge Walker issued the aforementioned R & R in which she recommended granting in part and denying in part Ocwen's motion to dismiss [Doc. 64]. Ocwen timely filed objections to the R & R [Doc. 69]. Plaintiff did not reply to Ocwen's objections. Ocwen's objections are now before the Court for its consideration.
B. Factual Background
For the purposes of a motion to dismiss, the Court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff." Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004) (citing Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003) ). The facts of this case are provided in detail in the R & R, but the Court highlights the pertinent facts as set forth in the Second Amended Complaint [Doc. 53].
*1278 Plaintiff asserts that at the start of November 2011, Ocwen acquired servicing rights for Plaintiff's mortgage account after Plaintiff had allegedly defaulted on the loan [Doc. 53 ¶¶ 12-13]. Plaintiff asserts nonetheless that his account was not in default and that it had been "charged off" in 2009 during Plaintiff's Chapter 13 bankruptcy,[1] well before Ocwen acquired servicing rights [Id. ¶ 14]. Ocwen sent Plaintiff a Welcome Letter dated October 14, 2011, which instructed Plaintiff to submit "all written inquiries" to Ocwen's customer service department at P.O. Box 24738 [id. ¶ 57; Doc. 69-1 at 5]; under the heading "Optional Insurance," the Welcome Letter also said to send qualified written requests ("QWRs") to Ocwen's Research Department, located at P.O. Box 24736 [Doc. 69-1 at 6]. Another letter from Ocwen dated November 4, 2011, again noted the customer service department as Ocwen's "Correspondence Address" [Doc. 53 ¶ 19]. All told, Plaintiff received "multiple communications from [Ocwen] advising [him] to send communications to various addresses" [Id. ¶ 21].
According to the Second Amended Complaint, Ocwen then allegedly began to falsely report to credit reporting agencies that Plaintiff's mortgage account was delinquent [Id. ¶ 15]. At the same time, Ocwen allegedly charged excessive fees and penalties to the account and would not send Plaintiff monthly statements [Id. ¶ 16]. Plaintiff allegedly contacted Ocwen on December 4, 2011, to dispute the amount he allegedly owed on his loan and to put Ocwen on notice of its errors [Id. ¶ 22]. Plaintiff received a response from Ocwen on January 31, 2012, in which it instructed Plaintiff to send future correspondence to Ocwen's Research Department at P.O. Box 24736 [Id. ¶ 23]. Plaintiff claims he sent a letter to P.O. Box 24736, as instructed, on February 27, 2012, but did not receive a response until May 17, 2012 [Id. ¶¶ 24-25].
Later, in 2014, Plaintiff again corresponded with Ocwen regarding his account. In September 2014, following his complaint to the Consumer Financial Protection Bureau, Plaintiff communicated with an Ocwen Consumer Account Analyst at a new address, P.O. Box 24646 [Id. ¶ 28]. Over the months and years that followed, Plaintiff continued to send letters to Ocwen requesting monthly statements and "inquiring into various issues" [Id. ¶¶ 29-32]. Some of these issues included the allegedly improper fees assessed against Plaintiff's account; Ocwen's responsibility to investigate inaccuracies in Plaintiff's account; and verifying the amount Plaintiff's account was allegedly in arrears [Id. at 32]. This type of correspondence continued between the parties through 2015 and much of 2016, with Ocwen allegedly failing to timely and adequately respond to many of Plaintiff's inquiries [Id. ¶¶ 33-47, 51-55]. Plaintiff sent his correspondence primarily by certified mail to either Ocwen's customer service department or Research Department [Id. ¶¶ 50, 57-58]. Plaintiff also sent inquiries to other addresses over the years as allegedly directed by Ocwen [Id. ¶¶ 59-60].
Plaintiff alleges that on May 20, 2016, Ocwen informed him his account had in *1279 fact been "charged off" prior to Ocwen's acquisition of servicing rights [Id. ¶ 69]. Plaintiff alleges that, because Ocwen incorrectly reported information regarding his account to credit reporting agencies, he "abstained from applying for credit, had adverse action taken on existing credit accounts[,] and was denied credit" [Id. ¶ 67]. He was denied credit for his company, The Ponder Group, LLC, and was unable to acquire a car loan [Id. ¶¶ 17-18]. Plaintiff also claims to have suffered emotional distress and pecuniary loss as a result of Ocwen's actions [Id. ¶ 67].
II. LEGAL STANDARD
A. District Court's Review of Magistrate's R & R
In reviewing an R & R, the Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636 (b) (1). Absent objection, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id.
B. Motion to Dismiss Standard of Review
Federal Rule of Civil Procedure 12(b) (6) permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." In ruling on Ocwen's pending motion to dismiss, the Court must accept as true all of the factual allegations in Plaintiff's Second Amended Complaint [Doc. 53] and construe them in a light most favorable to him. Young Apartments, Inc. v. Town of Jupiter, Fla., 529 F.3d 1027, 1037 (11th Cir. 2008) (citation omitted).
[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.
Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citations omitted).
This standard requires "enough fact to raise a reasonable expectation that discovery will reveal evidence" of the claim. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). It is not necessary for a complaint to set out all the facts in detail, but a plaintiff has to at least allege "enough factual matter (taken as true) to suggest" the existence of the required elements of the claim. Id.; see also Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1296 (11th Cir. 2007). At this stage, while the Court must accept as true all of the factual allegations in Plaintiff's Second Amended Complaint, it need not accept legal conclusions couched as factual allegations. Iqbal, 556 U.S. at 678, 129 S.Ct. 1937 (citations omitted).
III. OCWEN'S OBJECTIONS
Ocwen objects to the recommendation that its motion to dismiss be partially denied. Specifically, Ocwen makes three objections:
1. Ocwen's RESPA obligations were never triggered--and thus Plaintiff's RESPA claims should be dismissed--because Ocwen clearly designated a specific address for QWRs, and Plaintiff failed to send QWRs to that address [Doc. 69 at 2-5].
2. Georgia does not recognize a cause of action for negligent loan servicing, so Plaintiff's negligence claim should be dismissed [Id. at 5-7].
*1280 3. O.C.G.A. § 7-4-17 does not provide a private cause of action or a basis for a negligence per se claim by Plaintiff.
The R & R reached the following conclusions regarding each of the above issues. First, the R & R finds that Ocwen failed to clearly designate an exclusive address for QWR correspondence and thus Plaintiff's RESPA claims should proceed. Second, although the R & R mentions Ocwen's argument that Georgia does not recognize a negligent mortgage servicing cause of action [Doc. 64 at 35], it does not address the issue. Finally, the R & R finds that although it is unclear whether O.C.G.A. § 7-4-17 provides a private right of action, Plaintiff may proceed with a negligence per se claim based on the statute and has pled sufficient facts for the claim. Having reviewed the R & R's findings and recommendations, the Court now addresses each of Ocwen's objections in turn.
A. Ocwen's Address Designation
Ocwen objects to the R & R's finding that it failed to clearly designate an address for QWRs. Ocwen contends that it did properly designate a QWR address and, accordingly, any correspondence Plaintiff sent elsewhere cannot serve as the basis for a RESPA claim. Ocwen argues the R & R applied the wrong regulatory standard to its address designation and, as a result, incorrectly found its address designation unclear. The Court agrees that the R & R applied the wrong regulation to Ocwen's alleged address designation. The regulation in effect at the relevant time was 24 C.F.R. § 3500.21(e) (1) ("Regulation X"). See Bivens v. Bank of Am., N.A., 868 F.3d 915, 919 (11th Cir. 2017). This relevant regulation stated only that servicers could " 'establish a separate and exclusive office and address for the receipt and handling of qualified written requests.' " Id. (quoting 24 C.F.R. § 3500.21 (e) (1) ). The newer version of the regulation, in contrast, added a requirement. Servicers must now inform the borrower that "notices of error" and information requests must be sent to the provided address. 12 C.F.R. §§ 1024.35 (c), 1024.36 (b). The R & R applied this newer regulation--which took effect years after Ocwen sent its 2011 Welcome Letter to Plaintiff--and thus found Ocwen's address designation lacking because it did not include the "requests for information" and "notices of error" language. To the extent that the R & R relied on this reasoning in finding Ocwen's address designation insufficient, the Court disagrees.
This was not the only basis for the R & R's finding that Ocwen's address designation was insufficient, however. The R & R also found that the address designation was not clear enough. "A servicer's designation of an exclusive address for QWRs must be clear to a reasonable borrower --to say otherwise would frustrate RESPA's consumer-protection purpose." Bivens, 868 F.3d at 920 (emphasis added). If the servicer's address designation meets this threshold of reasonableness, a borrower must mail QWRs to that address to trigger the servicer's duty to respond under RESPA. Id. at 919.
In Bivens, the loan servicer included the following language in its initial letter to the borrower-plaintiff:
If you wish to send a written request about your account or dispute any of the information on this statement, please do not include it with your monthly payment. All written requests must be sent to the address listed below for Disputes/Inquiries, *1281 as this is our exclusive address for processing these matters. If you send your request or dispute to any other address, it may not be processed....
Id. at 917. The Court found this language was sufficiently clear and effectively designated an exclusive address for QWRs from the plaintiff-borrower. Id. at 919. The Court said that "[b]y directing borrowers to send all written requests to the specified address, [the loan servicer] necessarily directed them to send 'qualified' written requests to that address." Id. at 920 (emphasis in original).
Here, Ocwen's letter was different. The first page of Ocwen's Welcome Letter to Plaintiff, under the heading "New Servicing Contact Information," stated the following: "As of 11/1/2011, all written inquiries should be sent to Ocwen at the following address ... P.O. Box 24738[,] West Palm Beach, FL" [Doc. 69-1 at 5] (emphasis added).[2] Then, the Welcome Letter states on page two, under the heading "Optional Insurance," that "[i]f you want to send a 'qualified written request' regarding the servicing of your loan, it must be sent to ... P.O. Box 24736[,] West Palm Beach, FL" [Doc. 69-1 at 6]. As in Bivens, the use of the word "all" would reasonably indicate to a borrower that any and every inquiry ought to be sent to the subsequent address. Further, the fact that the QWR-specific address is provided later in the Welcome Letter under the heading "Optional Insurance" may cause confusion for the reasonable borrower.
This potential confusion is further exacerbated by Plaintiff's factual allegations. First, Plaintiff alleges that, following receipt of Ocwen's Welcome Letter, he received a second letter from Ocwen listing a "Correspondence Address" in bold which matched the address provided in the Welcome Letter for "all" inquiries [Doc. 53 ¶ 19; Doc. 69-1 at 5]. At one point, Plaintiff corresponded with an Ocwen Consumer Account Analyst at a new, third address--P.O. Box 24646, West Palm Beach, Florida--regarding his complaints [Doc. 53 ¶ 28]. Finally, Plaintiff states that "[o]ver the years, Ocwen directed [him] to submit further inquiries and documents in support of Plaintiff's alleged errors to various addresses, fax numbers, etc.," other than the address Ocwen alleged it designated for QWR receipt [Id. ¶ 59]. Thus, Plaintiff's RESPA claims are plausible at this stage and should not be dismissed.
B. Negligent Loan Servicing under Georgia Law
Ocwen next objects to the viability of a negligent loan servicing claim under Georgia law. The R & R mentions this argument by Ocwen but does not directly address it. Specifically, Ocwen contends that negligent loan servicing is not a cause of action in Georgia because loan servicers do not have an automatic fiduciary duty to borrowers that would give rise to a claim in tort.
The Court agrees that no fiduciary duty typically exists between a loan servicer *1282 and a borrower. See Mukendi v. Wells Fargo N.A., No. 1:13-CV-1436-RWS, 2014 WL 359947, at *5 (N.D. Ga. Feb. 3, 2014) (Story, J.) (noting that the plaintiff failed to allege a duty owed to him by the servicer-defendant to support a negligent servicing claim and stating that "the Court of Appeals of Georgia has held that a borrower and its secured lender have no relationship beyond that imposed by contract") (citation omitted); see also Bilal v. Wells Fargo Bank, N.A., No. 1:12-CV-3708-TWT, 2014 WL 814228, at *3 (N.D. Ga. Jan. 15, 2014) (Thrash, J.) (citing Anderson v. Deutsche Bank Nat'l Trust Co., No. 1:11-cv-4091-TWT, 2012 WL 3756512, at *9 (N.D. Ga. Aug. 6, 2012), adopted by 2012 WL 3756435 (N.D. Ga. Aug. 27, 2012) ) ("Georgia law does not recognize a claim for negligent mortgage servicing."). Thus, the Court agrees with Ocwen that Plaintiff's negligence claim against Ocwen cannot be based on a supposed fiduciary duty owed under Georgia law by Ocwen to Plaintiff. If Plaintiff's negligence claim is to move forward, it must assert a duty derived from a different source.
C. O.C.G.A. § 7-4-17
Ocwen last objects to the R & R's finding that O.C.G.A. § 7-4-17 gives rise to a cause of action for Plaintiff. Ocwen's objection has three parts: (1) O.C.G.A. § 7-4-17 does not create an implied private right of action; (2) O.C.G.A. § 7-4-17 may not be used to establish duty for Plaintiff's negligence claim via a negligence per se theory; and (3) Plaintiff's Second Amended Complaint fails to allege sufficient facts that Ocwen violated O.C.G.A. § 7-4-17. As the R & R notes, the relevant portion of O.C.G.A. § 7-4-17 provides: "When a payment is made upon any debt, it shall be applied first to the discharge of any interest due at the time, and the balance, if any, shall be applied to the reduction of the principal."
Ocwen's first argument is that O.C.G.A. § 7-4-17 does not provide an implied private right of action. "Georgia has 'longstanding precedential authority rejecting the creation of implied private rights of action.' " Bellsouth Telecomm'ns, LLC v. Cobb Cty., 342 Ga. App. 323, 326, 802 S.E.2d 686 (Ga. Ct. App. 2017) (quoting Somerville v. White, 337 Ga. App. 414, 417, 787 S.E.2d 350 (Ga. Ct. App. 2016) ). Thus, the legislative intent to create an implied private right of action must be evident in the provisions of the statute at issue and may not merely be drawn from the public policy the statute advances. Walker v. Oglethorpe Power Corp., 341 Ga. App. 647, 657, 802 S.E.2d 643 (Ga. Ct. App. 2017).
As the R & R notes, O.C.G.A. § 7-4-17 is silent regarding the availability of a private cause of action under it. The statute also does not provide a penalty for its violation or a statute of limitations period. Additionally, neither party provides any Georgia decision with respect to the question of whether O.C.G.A. § 7-4-17 provides a private right of action to an individual such as Plaintiff. In the absence of such authority, the Court declines to recognize such a claim. Moreover, Plaintiff's Second Amended Complaint does not assert a claim against Ocwen based solely on O.C.G.A. § 7-4-17 ; instead, Plaintiff attempts to use the provision as a basis for his negligence claim against Ocwen.
The Court finds Plaintiff fails in this attempt. Ocwen argues Plaintiff failed to plead facts sufficient to sustain a claim based on O.C.G.A. § 7-4-17. The Court agrees. Plaintiff filed an extensive Second Amended Complaint crafted by his lawyers.
*1283 Notwithstanding its length and breadth, however, it fails to sufficiently allege that Plaintiff made monthly payments to Ocwen toward the principal and interest of his loan while Ocwen was servicing the loan. The Second Amended Complaint also fails to allege facts regarding Ocwen's alleged misapplication of payments; Plaintiff makes only a conclusory allegation that Ocwen "failed to apply payments as O.C.G.A. § 7-4-17 requires" [Doc. 53 ¶ 115]. Plaintiff thus fails to sufficiently plead an O.C.G.A. § 7-4-17 violation by Ocwen. Plaintiff's remaining negligence claim--based on Ocwen's alleged O.C.G.A. § 7-4-17 violation--is DISMISSED.
IV. CONCLUSION
For the reasons stated above, Ocwen's objections [Doc. 69] are OVERRULED IN PART and SUSTAINED IN PART and Judge Walker's Final Report and Recommendation is ADOPTED IN PART AND OVERRULED IN PART. Ocwen's Motion to Dismiss [Doc. 54] is thus DENIED IN PART and GRANTED IN PART.
SO ORDERED, this 27th day of September, 2018.

Plaintiff's lengthy and fact intensive complaint does not clarify whether Plaintiff's mortgage debt was discharged, in whole or in part, in his bankruptcy proceeding. "Charge off" of a loan is in common meaning an internal decision by the lender that the loan is probably uncollectible. A "charge off" does not extinguish the debt; in theory the lender may still elect to pursue collection.

As the R & R mentions [Doc. 64 at 26 n.3], the Court here considers the content of Ocwen's Welcome Letter because it was attached to Ocwen's original motion to dismiss, referenced by Plaintiff in his Second Amended Complaint, is central to his RESPA claims, and is undisputed by the parties. Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005) (noting that a court may consider an attached document if it is "(1) central to the plaintiff's claim and (2) undisputed," meaning that "the authenticity of the document is not challenged").