**IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI**

**NO. 2018-CA-01513-COA**

**SCOTT BURKLEY A/K/A SCOTT BERKLEY** **APPELLANT**

**v.**

**US BANK NA, TRUSTEE FOR LSF9 PARTICIPATION TRUST, OCWEN LOAN SERVICING LLC, FIRST NATIONAL REALTY INC., LSF9 PARTICIPATION TRUST, AND GLEN HARDY** **APPELLEES**

| | |
|---|---|
| DATE OF JUDGMENT: | 09/28/2018 |
| TRIAL JUDGE: | HON. GERALD W. CHATHAM SR. |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DRAYTON D. BERKLEY |
| ATTORNEYS FOR APPELLEES: | CLARENCE WEBSTER III<br>LAURA WELIKSON<br>MOLLY MITCHELL WALKER<br>MICHAEL JAMES BENTLEY |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 05/05/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLTON, P.J., TINDELL AND McDONALD, JJ.**

**CARLTON, P.J., FOR THE COURT**:

¶1. This appeal involves two issues. The first issue is whether there exists a genuine issue of material fact that defendant Ocwen Loan Servicing LLC (Ocwen) owed a duty under the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2605, to respond to a request for information from plaintiff Scott Berkley pertaining to a delinquent mortgage loan. The second issue is whether there exists a genuine issue of material fact that defendant U.S. Bank Trust N.A., as Trustee for LSF9 Master Participation Trust, (U.S. Bank) fulfilled its duties

under the Truth in Lending Act (TILA), 15 U.S.C. § 1641, and 12 C.F.R. § 1026.39 to provide timely notice of the sale of the mortgage loan in question to the borrower of the loan. The DeSoto County Circuit Court found that there existed no genuine issue of material fact as to either issue, granted summary judgment on these issues in Ocwen's and U.S. Bank's favor, and dismissed Berkley's claims against them. Finding no error, we affirm.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

¶2. The underlying lawsuit in this case arises from a "Complaint for Declaratory Relief, Damages, and to Set Aside Foreclosure" filed by Scott Berkley in the DeSoto County Circuit Court on September 1, 2016, against U.S. Bank,[1] First National Realty Inc., LSF9 Participation Trust, and Glen Hardy. Berkley filed an amended complaint on May 26, 2017, (Amended Complaint), naming Ocwen as an additional defendant. Berkley's claims against U.S. Bank and Ocwen are the only ones at issue in this appeal.

¶3. According to Berkley's Amended Complaint, on or about June 5, 2000, decedent Cora Berkley (Decedent) purchased real property at 1200 Sparks Road in DeSoto County, Mississippi (the Property). The Amended Complaint alleged claims under "Mississippi common law," RESPA, 15 U.S.C. § 2605, TILA, 15 U.S.C. § 1641, and corresponding federal regulations. Berkley sought actual, statutory, and punitive damages, as well as attorney's fees.[2]

---

[1] U.S. Bank Trust N.A., as Trustee for LSF9 Master Participation Trust, was incorrectly identified in Berkley's Amended Complaint as "US Bank NA, Trustee for LSF9 Participation Trust."

[2] The Amended Complaint also asserted claims under RESPA, 15 U.S.C. § 1635 and 12 C.F.R. §§ 1024.39 and 1024.41, related to the validity of U.S. Bank's foreclosure on the

¶4. According to the allegations of Berkley's Amended Complaint, Decedent obtained a loan to purchase the Property, and that loan was secured by a deed of trust. On or about August 7, 2006, Decedent refinanced the Property with a loan from "GMAC." Decedent modified the promissory note and deed of trust on February 26, 2008. On September 3, 2012, Decedent died intestate. Berkley's Amended Complaint provides that the Property allegedly descended to Berkley and his lawyer, Drayton Berkley, under the Mississippi laws of descent and distribution.

¶5. The record reflects that under an "Assignment of Deed of Trust" recorded May 23, 2013, "GMAC Mortgage, LLC in C/O Ocwen Loan Servicing, LLC . . . grant[ed], assign[ed] and transfer[red] to Ocwen Loan Servicing, LLC . . . all beneficial interest under a certain Deed of Trust dated August 7, 2006 executed by CORA BERKLEY . . . ."

¶6. On January 22, 2014, Ocwen, which was servicing the mortgage loan associated with the Property, sent a letter to the Estate of Cora Berkley responding to an inquiry the Estate appears to have made regarding the loan on the Property and a payment that was sent to Ocwen to reinstate the loan. In that letter, Ocwen confirmed that the loan had been reinstated and that another payment was due on February 1, 2014. At the end of the letter, Ocwen provided various ways in which the Estate could contact Ocwen if it had any additional questions or concerns, including the option that the Estate "may . . . send written correspondence to the following address: Ocwen Loan Servicing LLC, Attention: Research Department, P.O. Box 24736, West Palm Beach, FL 33416-4736." There was no specific

---

Property and Berkley's attempt to rescind the loan in 2015. These claims were dismissed, and Berkley does not challenge the dismissal on appeal.

reference in this letter regarding the submission of a "qualified written request." Instead, this letter simply provided various ways in which the Estate could contact the company for general inquiries.

¶7. Specifically regarding instructions for submitting "a qualified written request," sometimes referred to as a "QWR," the record reflects that Ocwen sent an account statement to the Estate on October 17, 2014, that plainly provided, "You *must* use this address for all *qualified written requests* . . . . Research Department, P.O. Box 24736, West Palm Beach, Florida 33416-4736." (Emphasis added). Ocwen also sent delinquency notices to the Estate in October, November, and December 2014, which alert the Estate that if it "would like to submit a *qualified written request* . . . [it] *must* use the following address: Research Department, P.O. Box 24736, West Palm Beach, Florida 33416-4736." (Emphasis added).

¶8. On January 2, 2015, Berkley sent a letter by "Certified Receipt Return Mail and US Regular Mail" entitled "QUALIFIED WRITTEN REQUEST/DEBT VALIDATION REQUEST"[3] (January 2, 2015 letter) to Ocwen. The January 2, 2015 letter was sent to Ocwen at "1661 Worthington Road Ste 100, West Palm Beach, FL 33409."

¶9. The record reflects that the mortgage loan was sold to LSF9 Master Participation Trust on November 12, 2015. U.S. Bank was the Trustee of LSF9 Master Participation Trust. On November 23, 2015, the LSF9 Master Participation Trust sent a "Notice of Sale of Ownership of Mortgage Loan" to the Estate.[4] The Notice of Sale of Ownership contained

[3] The circuit court did not rule whether this letter constituted a QWR.

[4] Although the notice does not indicate on its face how it was sent to the Estate, the record contains the affidavit of Jaime Guevara, a default service officer with Caliber Home

various information, including LSF9 Master Participation Trust's identity, address, and telephone number; the date of the transfer; how to reach LSF9 Master Participation Trust's servicing agent; the location of the place where transfer of ownership would be recorded; partial payment guidelines; and other relevant information regarding the LSF9 Master Participation Trust.

¶10. The record reflects that under an "Assignment of Mortgage/Deed of Trust" recorded July 11, 2016, Ocwen "grant[ed], assign[ed] and transfer[ed] to U.S. Bank . . . as Trustee for LSF9 Master Participation Trust . . . all beneficial interest under that certain Deed of Trust dated August 7, 2006 executed by CORA BERKLEY . . . TOGETHER with the note or notes therein described or referred to, the money due or to become due thereon with interest, and all rights accrued or to accrue under said mortgage/Deed of Trust/Security Deed."

¶11. On July 25, 2016, U.S. Bank sent a notice of foreclosure sale of the Property, to which Berkley objected. On August 23, 2016, U.S. Bank conducted the foreclosure sale and later undertook efforts to eject Berkley from the Property.

¶12. In August 2017, U.S. Bank and Ocwen both filed motions to dismiss Berkley's claims against them, which Berkley opposed. Ocwen filed a reply to Berkley's opposition, attaching as an exhibit the May 16, 2013 assignment from GMAC Mortgage LLC (GMAC) to Ocwen of the deed of trust to the Property. In an order entered December 22, 2017, the circuit court converted the motions to dismiss to motions for summary judgment and allowed Berkley

---

Loans Inc. (Caliber), the servicing agent for the LSF9 Master Participation Trust when Guevara's affidavit was signed in January 2018. Guevara's affidavit provides that the notice would have been sent via U.S. mail, postage prepaid, which was Caliber's customary business practice.

time to submit additional material to support his opposition. Berkley filed a "Supplemental Memorandum and Itemization of Facts" in opposition to the motions for summary judgment, as well as a motion to strike the exhibit attached to Ocwen's reply. Ocwen opposed Berkley's motion to strike and filed a reply to his supplemental memorandum, attaching the above-referenced account statement, delinquency notices, and the January 22, 2014 letter from Ocwen to the Estate. Berkley filed a second motion to strike some of these additional exhibits, which Ocwen also opposed.

¶13. The circuit court set a hearing on the defendants' motions for summary judgment and Berkley's motions to strike, which took place on May 30, 2018. In an order entered September 28, 2018, the court denied Berkley's motions to strike, and in a separate order entered the same date, the circuit court granted summary judgment to U.S. Bank and Ocwen and dismissed Berkley's lawsuit with prejudice. Berkley appeals.

**STANDARD OF REVIEW**

¶14. This Court reviews a circuit court's "grant or denial of a motion for summary judgment de novo, viewing the evidence in the light most favorable to the party against whom the motion has been made." *Holifield v. City Salvage Inc.*, 230 So. 3d 736, 738 (¶5) (Miss. Ct. App. 2017) (quoting *Karpinsky v. Am. Nat'l Ins.*, 109 So. 3d 84, 88 (¶9) (Miss. 2013)). In this regard, summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* (quoting M.R.C.P. 56(c)). "Numerous, immaterial facts

may be controverted, but only those that affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Summers ex rel. Dawson v. St. Andrew's Episcopal Sch. Inc.*, 759 So. 2d 1203, 1208 (¶12) (Miss. 2000) (internal quotation mark omitted). Additionally, "the party opposing summary judgment 'may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.'" *Froemel v. Estate of Froemel*, 248 So. 3d 876, 878-79 (¶8) (Miss. Ct. App. 2018) (quoting M.R.C.P. 56(e)).

## DISCUSSION

### I. Berkley's RESPA Claim Against Ocwen

¶15. Berkley asserts that the circuit court erred in granting summary judgment in Ocwen's favor because a genuine issue of material fact remains as to whether Ocwen, as the loan servicer, properly designated an address for qualified written requests to be sent under RESPA. In response, Ocwen asserts that summary judgment in its favor should be affirmed because Berkley's only claim against it—under RESPA, 12 U.S.C. § 2605—fails to state a plausible claim for relief because Berkley's January 2, 2015 letter, the purported QWR, was sent to the wrong address and therefore did not warrant any response.

¶16. The applicable law with respect to this issue provides that "RESPA is a consumer protection statute that, in relevant part, obligates a covered loan servicer to respond to a borrower's qualified written requests (QWRs)." *Wease v. Ocwen Loan Servicing L.L.C.*, 915 F.3d 987, 995 (5th Cir. 2019) (citing 12 U.S.C. § 2605(e)). "A QWR is a written request 'for

information relating to the servicing of [a] loan.'" *Id.* (quoting 12 U.S.C. § 2605(e)(1)(A)). "When a borrower sends a QWR, the loan servicer must, among other actions, return 'a written response acknowledging receipt of the correspondence.'" *Id.* (quoting 12 U.S.C. § 2605(e)(2)(A)–(C)). "Pursuant to § 2605(f), a borrower can sue a servicer who fails to reply as required." *Id.*

¶17. The regulations accompanying these statutory provisions authorize a covered servicer to designate an address that "a borrower must use" to submit a QWR. *See* 12 C.F.R. §§ 1024.35(c), 1024.36(b); *Wease*, 915 F.3d at 995. In particular, 12 C.F.R. § 1024.36 (Regulation X) provides in relevant part:

> A servicer may, by written notice provided to a borrower, establish an address that a borrower must use to request information in accordance with the procedures in this section. The notice shall include a statement that the borrower must use the established address to request information. If a servicer designates a specific address for receiving information requests, a servicer shall designate the same address for receiving notices of error pursuant to § 1024.35(c).

12 C.F.R. § 1024.36(b).

¶18. "In the event the servicer establishes such an office and complies with all the necessary notice provisions of this rule, then the borrower must deliver its request to that office in order for the inquiry to be a 'qualified written request[.]'" Real Estate Settlement Procedures Act, Section 6, Transfer of Servicing of Mortgage Loans, 59 Fed. Reg. 65,442, 65,446 (Dec. 19, 1994).

¶19. Relying only on a January 22, 2014 letter from Ocwen to the Estate that was apparently written in response to the Estate's inquiry about the loan's status, Berkley asserts

that because this letter provides that if the Estate had any further questions, it "may" send written correspondence to "Ocwen Loan Servicing LLC, Attention: Research Department, P.O. Box 24736, West Palm Beach, FL 33416-4736," this was not an unequivocal designation of an exclusive address where a qualified written request must be sent. According to Berkley, the use of the term "may" in this letter created an ambiguity and therefore a genuine issue of material fact regarding Ocwen's designated address.

¶20. Ocwen, on the other hand, asserts that it properly designated an exclusive address for the submission of QWRs and provided written notice to the Estate of this address, in accordance with RESPA, 12 U.S.C. § 2605, and Regulation X. As detailed above, Ocwen sent delinquency notices to the Estate, including on December 18, 2014, only one month before the alleged QWR was purportedly mailed, in which Ocwen stated:

> If you would like to submit a *qualified written request*, a notice of error, or a request for information, you *must* use the following address:
>
> Research Department, P.O. Box 24736, West Palm Beach, Florida, 33416-4736.

(Emphasis added). The same language appears in the other delinquency notices sent to the Estate—each of these notices designate the same mailing address for borrower correspondence: "Research Department, P.O. Box 24736, West Palm Beach, Florida, 33416-4736," and the notices provide that any qualified written request *must* be sent to that address. The account statement sent to the Estate in October 2014 also provided that any qualified written request *must* be sent to this address.

¶21. Our review of the January 22, 2014 letter Berkley relied upon to assert that there was

an ambiguity in Ocwen's QWR address designation shows that this letter did not specifically refer to the submission of a "qualified written request" at all. Instead, it simply provided various ways in which the company could be contacted for general inquiries regarding the loan. In contrast, as described above, the loan delinquency notices and account statement sent to the Estate specifically mandated the address where "a qualified written request" "must" be sent. Additionally, all correspondence from Ocwen addressed to the Estate only contained the correct address and no other address, including the January 22, 2014 letter.

¶22. Under these circumstances, we find that Ocwen properly designated an exclusive address for the submission of QWRs and provided written notice of this address to the Estate. We further find that Berkley's purported QWR was sent to the wrong address and therefore did not warrant any response. Indeed, the only case that Berkley cites in support of his argument is *Roth v. CitiMortgage Inc*., 756 F.3d 178, 181-82 (2d Cir. 2014), a case in which the United States Court of Appeals for the Second Circuit recognized the general principle that "[the] failure to send the request to the designated address does not trigger the servicer's duties under RESPA." This principle, however, supports *Ocwen's*, not Berkley's, argument.

¶23. Elaborating on this principle, the United States Court of Appeals for the Fifth Circuit in *Wease v. Ocwen Loan Servicing L.L.C.* recognized that "[i]gnoring an exclusive QWR address carries harsh consequences. Circuit courts consistently conclude that a loan servicer need not answer a misaddressed QWR—and that responding to such a letter does not trigger RESPA duties—if the servicer set an exclusive address." *Wease*, 915 F.3d at 995.[5] "RESPA

[5] *See also, e.g.*, *Bivens v. Bank of Am. N.A.*, 868 F.3d 915, 921 (11th Cir. 2017) ("Because Bivens failed to address his QWR to SPS's designated address for QWR receipt,

and its implementing regulation envisioned that only certain communications would trigger liability for damages under § 2605, and delineated certain requirements for communications before imposing that liability." *Berneike v. CitiMortgage Inc.*, 708 F.3d 1141, 1149 (10th Cir. 2013). "Communication failing to meet the requirements of RESPA and its implementing regulation amounts to nothing more than general correspondence between a borrower and servicer." *Id.*; *see also Roth*, 756 F.3d at 182 ("As long as a servicer complies with the notice requirements of [Regulation X] for designating a QWR address, a letter sent to a different address is not a QWR[.]"); *Steele v. Green Tree Serv. LLC*, No. 3:09-CV-0603-D, 2010 WL 3565415, at *3 (N.D. Tex. Sept. 7, 2010) ("The court holds that [the lender] never received a qualified written request because the [plaintiff's] letters were not sent to the exclusive address that [the lender] specified.").

¶24. Accordingly, we find that there is no genuine issue of material fact that Berkley's RESPA claim against Ocwen fails as a matter of law. We therefore affirm the circuit court's decision to grant summary judgment in Ocwen's favor and dismiss Berkley's lawsuit against it.

## II. Berkley's TILA Claim Against U.S. Bank

¶25. As noted above, under an "Assignment of Mortgage/Deed of Trust," recorded July 11, 2016, Ocwen "grant[ed], assign[ed,] and transfer[ed] to U.S. Bank . . . as Trustee for LSF9 Master Participation Trust . . . all beneficial interest under that certain Deed of Trust dated

---

SPS had no duty to respond to it."); *Roth*, 756 F.3d at 181-82 ("Regulation X's grant of authority to servicers to designate an exclusive address is a permissible construction of RESPA, and thus failure to send the request to the designated address does not trigger the servicer's duties under RESPA." (internal quotation marks omitted)).

August 7, 2006 executed by CORA BERKLEY . . . TOGETHER with the note or notes therein described or referred to, the money due or to become due thereon with interest, and all rights accrued or to accrue under said mortgage/Deed of Trust/Security Deed." Berkley asserts that the circuit court erred in granting summary judgment in U.S. Bank's favor because there is a genuine issue of material fact whether U.S. Bank violated TILA, 15 U.S.C. § 1641(g), and 12 C.F.R. § 1026.39 (Regulation Z) when it failed to provide the disclosures required by TILA within thirty days of July 11, 2016 (the date it received the "Assignment of Mortgage/Deed of Trust" from Ocwen).

¶26. Section 1641(g) provides:

> (g) Notice of new creditor
>
> (1) In general
>
> In addition to other disclosures required by this subchapter, *not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer*, including –
>
> (A) the identity, address, telephone number of the new creditor;
>
> (B) the date of transfer;
>
> (C) how to reach an agent or party having authority to act on behalf of the new creditor;
>
> (D) the location of the place where transfer of ownership of the debt is recorded; and
>
> (E) any other relevant information regarding the new creditor.

> (2) Definition
>
> As used in this subsection, the term "mortgage loan" means any consumer credit transaction that is secured by the principal dwelling of a consumer.

15 U.S.C. § 1641(g) (emphasis added). Regulation Z, 12 C.F.R. § 1026.39, "implements the Truth in Lending Act." *Robertson v. U.S. Bank N.A.*, 831 F.3d 757, 762 (6th Cir. 2016).[6]

¶27. Berkley asserts that U.S. Bank was obligated to provide notice under § 1641(g) within thirty days of July 11, 2016, because, according to Berkley, under the "plain language of the July 11[,] [2016] Assignment," U.S. Bank became the new owner of the deed of trust and the debt or promissory note on July 11, 2016, and thus its obligation to make its TILA disclosures within thirty days was triggered on that date.

¶28. We find no merit in Berkley's assertions. The record reflects that the mortgage loan belonging to the Estate was sold to LSF9 Master Participation Trust on November 12, 2015. As reflected in Berkley's Amended Complaint and throughout the record, U.S. Bank is the trustee of LSF9 Master Participation Trust. On November 23, 2015, within eleven days of that transfer, the trust sent a "Notice of Sale of Ownership of Mortgage Loan" to the Estate.

¶29. As detailed above, the Notice of Sale included LSF9 Master Participation Trust's identity, address, and telephone number, the date of the transfer, how to reach LSF9 Master Participation Trust's servicing agent, the location of the place where transfer of ownership would be recorded, partial payment guidelines, and other relevant information regarding the

---

[6] Subsection 12 C.F.R. § 1026.39(d) similarly sets forth the content of required disclosures, including those listed in 15 U.S.C. § 1641(g), as well as the required disclosures if the lender accepts partial payments.

LSF9 Master Participation Trust. In short, our review of the record indicates that the Notice of Sale contained the information required by 15 U.S.C. § 1641(g) and 12 C.F.R. § 1026.39(d) and that the evidence establishes that U.S. Bank complied with its obligations under these provisions. *See Berkley v. Midfirst Bank*, No. 3:15-CV-110-SA-SAA, 2016 WL 2907705, at *2 (N.D. Miss. May 18, 2016) (finding that the defendant did not violate TILA when it sent notice satisfying the requirements of 15 U.S.C. § 1641(g) and 12 C.F.R. § 226.39[7] within 30 days after mortgage loan was transferred).

¶30. We further find that the July 11, 2016 Assignment from Ocwen to U.S. Bank, as Trustee for LSF9 Master Participation Trust, did not trigger any disclosure obligations on U.S. Bank's part under TILA. The applicable caselaw provides that the notice requirements under TILA, 15 U.S.C. §1641(g), "appl[y] only to an assignment of the underlying debt, not to the instrument—such as the . . . deed of trust—that secures the transaction." *Robertson*, 831 F.3d at 762. In *Robertson v. U.S. Bank N.A.*, the United States Court of Appeals for the Sixth Circuit recognized that "§ 1641(g) requires notice of assignment only of a 'mortgage loan' or 'debt,' which it defines as 'any consumer credit transaction that is secured by the principal dwelling of a consumer.'" *Id.* (quoting § 1641(g)(2)). "Regulation Z, which implements the Truth in Lending Act, applies § 1641(g) only to entities that 'acquir[e] legal title to the debt obligation.'" *Id.* (quoting 12 C.F.R. § 1026.39(a)(1)); *see Giles v. Wells*

---

[7] Following the transfer of authority to enforce Regulation Z from the United States Department of Housing and Urban Development (HUD) to the Credit Financial Protection Bureau (CFPB), 12 C.F.R. § 226.39 was re-codified as 12 C.F.R. § 1026.39. *See* Bank Compliance Guide ¶¶102-228, 2013 WL 11028636 (Nov. 20, 2013) (reporting final rule issuance regarding 12 C.F.R. §§ 1024 and 1026).

*Fargo Bank N.A.*, 519 F. App'x 576, 578 (11th Cir. 2013) (unpublished) (explaining that § 1641(g) only refers to transfers of the debt, not the security instrument).[8]

¶31. We recognize that Berkley asserts that the "plain language" of the July 11, 2016 assignment evidences that Ocwen assigned its interest under the August 7, 2006 deed of trust executed by Cora Berkley, "TOGETHER with the note or notes therein described or referred to, the money due or to become due thereon with interest, and all rights accrued or to accrue under said mortgage/Deed of Trust/Security Deed." However, there is no evidence in the record that Ocwen had any interest in the debt obligation in 2016.

¶32. On the contrary, as we have addressed above, the record reflects that the mortgage loan belonging to the Estate was sold to LSF9 Master Participation Trust on November 12, 2015, and there is no evidence in the record that any other transactions occurred between November 12, 2015, and July 11, 2016, when Ocwen's Assignment to U.S. Bank was recorded. Accordingly, regardless of what the "plain language" of the Assignment provides, Ocwen could not assign legal rights that it did not own, as the Mississippi Supreme Court has

---

[8] *See also Chomo v. Full Spectrum Lending Inc.*, No. 17-CV-12466-DJC, 2019 WL 3253701, at *3 (D. Mass. July 19, 2019) ("15 U.S.C. § 1641(g) does not apply to an assignment of the Mortgage, as opposed to the underlying debt."); *Ruegsegger v. Caliber Home Loans Inc.*, No. SACV170907DOCKESX, 2018 WL 5993857, at *28 (C.D. Cal. Apr. 30, 2018) (finding that the notice requirement under § 1641(g) "would only apply to the assignment of the underlying debt, not the instrument—the Plaintiffs' Deed of Trust—that secures the transaction" and discussing cases); *Barr v. Flagstar Bank F.S.B.*, Civ. A. No. RDB-13-2654, 2014 WL 4660799, at *3 (D. Md. Sept. 17, 2014) (noting that the term "mortgage loan" is "synonymous *only* with 'debt'" and that § 1641(g) reflects a "conscious choice to exclude transfers of only the security instrument"); *Connell v. CitiMortgage Inc.*, No. 11-0443-WS-C, 2012 WL 5511087, at *6 (S.D. Ala. Nov. 13, 2012) ("The 'mortgage loan' is the credit transaction itself (i.e., the Note), not the instrument securing that credit transaction (i.e., the Mortgage).").

consistently found:

> On numerous occasions this Court has said that in assignments of contracts between parties an assignee obtains no greater right in the thing assigned than was possessed by the assignor, but simply stands in the shoes of the latter and the assignee's rights can rise no higher than the assignors.

*Stribling Inv. LLC v. Mike Rozier Const. Co.*, 189 So. 3d 1216, 1220 (¶15) (Miss. 2016) (quoting *Ford v. White*, 495 So. 2d 494, 497 (Miss. 1986)) (citations omitted); *see Neel v. Fannie Mae*, No. 1:12CV311-HSO-RHW, 2014 WL 896754, at *10 (S.D. Miss. Mar. 6, 2014) (recognizing that because the assignor "never owned an interest in the Note . . . the legal effect of the November 9, 2011[] Assignment and transfer from MERS to [the assignee,] Saxon[,] was an assignment of MERS' interest in the Deed of Trust to Saxon; nothing more was or could have been transferred"); *Connell*, 2012 WL 5511087, at *9 ("A party cannot assign legal rights or interests that it does not own . . . ."). As explained in *Connell v. CitiMortgage Inc.*, "[b]ecause the effect of the . . . Assignment . . . was to assign only an interest in a Mortgage and not an interest in the underlying loan (which [the assignor] did not have and could not convey), no § 1641(g) obligation was triggered by that Assignment . . . ." *Id.* The same principle applies here. We therefore find that Berkley's TILA claim against U.S. Bank fails as a matter of law. Accordingly, we find that the circuit court did not err in granting summary judgment in U.S. Bank's favor and dismissing Berkley's claim against it.

¶33. **AFFIRMED.**

**BARNES, C.J., J. WILSON, P.J., GREENLEE, WESTBROOKS, TINDELL, LAWRENCE AND C. WILSON, JJ., CONCUR. McDONALD, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**

**McCARTY, J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION, JOINED IN PART BY WESTBROOKS, McDONALD AND LAWRENCE, JJ.**

**McCARTY, J., CONCURRING IN RESULT ONLY:**

¶34. Because the Court's opinion follows current precedent, I agree summary judgment should be affirmed, especially given the lean factual record before us. My concern is that the purposes of the federal laws applied in this dispute are to *increase* consumer understanding of real estate and credit terms, and yet they have been used to combat consumer requests for information on technical grounds. The complexity of the Court's opinion today shines a light on this ugly reality.

¶35. Indeed, the motivation behind the Real Estate Settlement Procedures Act was not to create more barriers to access for consumers, but to *lower* them. When adopting the laws, "Congress f[ound] that significant reforms in the real estate settlement process are needed to insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process . . . ." 12 U.S.C. § 2601(a). Congress also wanted consumers "protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country." *Id*.

¶36. With this policy statement, Congress made it expressly clear that RESPA was meant "to effect certain changes in the settlement process for residential real estate that will result . . . in more effective advance disclosure to home buyers and sellers of settlement costs" and "in significant reform and modernization of local recordkeeping of land title information." *Id*. § 2601(b)(1), (4).

¶37. Likewise, the Truth in Lending Act was created "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a).

¶38. Notwithstanding the laudable public policy behind these series of laws, they are hampered by technical requirements, complex jargon, and meticulous procedures. These barriers have been used to defray or deflect consumer inquiries. As the majority notes, federal courts have ruled that "[i]gnoring an exclusive QWR address carries harsh consequences" because "a loan servicer need not answer a misaddressed QWR—and that responding to such a letter does not trigger RESPA duties—if the servicer set an exclusive address." *Wease v. Ocwen Loan Servicing L.L.C.*, 915 F.3d 987, 995 (5th Cir. 2019).

¶39. To apply such stringent standards to a law meant to allow more consumer flexibility strikes me as fundamentally perverse. A company can set an address for QWR, communicate to a consumer through a different address, and then refuse to speak to that consumer if he or she asks the company a question at the address *they used for correspondence*. And a company can do this even if there is no dispute that it *actually received* the inquiry, but just received it at the "wrong" address.

¶40. This procedure weakens the fundamental purpose of laws that were created to protect consumers from overreaching and lopsided credit agreements. I think the Court today correctly applies the law as it stands, but I believe Americans deserve laws that actually protect their interests. We should effectuate the purpose of these laws by affording greater

protections to consumers rather than hindering consumer access to information by technical requirements.

¶41. For the foregoing reasons, I respectfully concur in the result only.

**WESTBROOKS, McDONALD AND LAWRENCE, JJ., JOIN THIS OPINION IN PART.**